IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


POLLY A. MASON,                      )
                                     )
                  Plaintiff,         )
                                     )
vs.                                  )        Case No. 07-1003-MLB
                                     )
MICHAEL J. ASTRUE,[1]                )
Commissioner of                     )
Social Security,                    )
                                     )
                  Defendant.         )
_____     )


RECOMMENDATION AND REPORT


    This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits.  The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I.  General legal standards**

    The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner

_____

    [1]On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

1

as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be

2

determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment expected
to result in death or last for a continuous period of twelve
months which prevents the claimant from engaging in substantial
gainful activity (SGA).  The claimant's physical or mental
impairment or impairments must be of such severity that they are
not only unable to perform their previous work but cannot,
considering their age, education, and work experience, engage in
any other kind of substantial gainful work which exists in the
national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential
evaluation process to determine disability.  If at any step a
finding of disability or non-disability can be made, the
Commissioner will not review the claim further.  At step one, the
agency will find non-disability unless the claimant can show that
he or she is not working at a "substantial gainful activity."  At
step two, the agency will find non-disability unless the claimant
shows that he or she has a "severe impairment," which is defined
as any "impairment or combination of impairments which
significantly limits [the claimant's] physical or mental ability
to do basic work activities."  At step three, the agency
determines whether the impairment which enabled the claimant to
survive step two is on the list of impairments presumed severe
enough to render one disabled.  If the claimant's impairment does

not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## II.  History of case

On September 12, 2006, administrative law judge (ALJ) Robert

4

J. Burbank, issued his decision (R. at 14-25). At step one, the ALJ found that plaintiff engaged in substantial gainful activity until October 7, 2003 (R. at 16). At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, cystic lesion in the right foot, and carpal tunnel syndrome in the right wrist. The ALJ also determined that plaintiff had a nonsevere depressive disorder (R. at 16). At step three, the ALJ found that plaintiff's impairments do not meet or equal a listed impairment (R. at 19). After establishing plaintiff's RFC, the ALJ found at step four that plaintiff could not perform past relevant work (R. at 23). At step five, the ALJ, relying on the testimony of a vocational expert (VE), found that plaintiff could perform other work that exists in significant numbers in the national economy. Therefore, the ALJ concluded that plaintiff was not disabled (R. at 24-25).

**III.  Did the ALJ err in finding that plaintiff's depression was a nonsevere impairment?**

At step two, the ALJ found that plaintiff had a nonsevere depressive disorder. The burden of proof at step two is on the plaintiff. See <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993)(the claimant bears the burden of proof through step four of the analysis). A claimant's showing at step two that he or she has a severe impairment has been described as "de

5

minimis." <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1169 (10th Cir.
1997); <u>see</u> <u>Williams v. Bowen</u>, 844 F.2d 748, 751 (10th Cir.
1988)("de minimis showing of medical severity").  A claimant need
only be able to show at this level that the impairment would have
more than a minimal effect on his or her ability to do basic work
activities.[2]  <u>Williams</u>,844 F.2d at 751.  However, the claimant
must show more than the mere presence of a condition or ailment.
If the medical severity of a claimant's impairments is so slight
that the impairments could not interfere with or have a serious
impact on the claimant's ability to do basic work activities, the
impairments do not prevent the claimant from engaging in
substantial work activity.  Thus, at step two, the ALJ looks at
the claimant's impairment or combination of impairments only and
determines the impact the impairment would have on his or her
ability to work.  <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352 (10th Cir.
1997).

   A claimant must provide medical evidence that he or she had
an impairment and how severe it was during the time the claimant

_____

   [2]Basic work activities are "abilities and aptitudes
necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)],
including "walking, standing, sitting, lifting, pushing, pulling,
reaching, carrying or handling; seeing, hearing, and speaking;
understanding, carrying out, and remembering simple instructions;
use of judgement, responding appropriately to supervision,
coworkers, and usual work situations; and dealing with changes in
a routine work setting." Social Security Ruling 85-28, 1985 WL
56856 at *3.  <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1123 (10th Cir.
2004).

alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).  The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists.  20 C.F.R. § 404.1513(a), § 416.913(a).  Evidence from other medical sources, including therapists, nurse-practitioners, and physicians' assistants, may be used to show the severity of an impairment and how it affects the ability to work.  20 C.F.R. § 404.1513(d)(1), § 416.913(d)(1).

Dr. Robert Barnett, a psychologist, performed a consultative mental examination of the plaintiff (R. at 234-236).  He stated that he observed no cognitive limitations in Ms. Mason that would interfere with employment.  She showed no difficulty with attention or concentration during the interview.  He found that she appeared capable of both simple and complex work tasks (R. at 236).  The ALJ relied on the report of Dr. Barnett in concluding that plaintiff had a nonsevere depressive disorder (R. at 17, 19).  Plaintiff relies on the fact that plaintiff had been diagnosed with depression and her testimony to demonstrate that her depression is a severe impairment (Doc. 5 at 11-13).

Plaintiff has the burden of proof at step two.  However, plaintiff has provided no medical opinion evidence that her mental impairments would have more than a minimal effect on her ability to perform basic work activities.  The ALJ has adequately

7

developed the record by ordering a consultative mental examination.  Furthermore, the ALJ did include in his RFC findings a limitation to simple, repetitive tasks due to her depressive disorder, her frequent crying spells, and the effects of pain and her narcotic medications (R. at 20, 23).  The court finds that the ALJ's finding at step two that plaintiff has a nonsevere depressive disorder is supported by substantial evidence.

**IV.  Did the ALJ err in his RFC findings?**

According to SSR 96-8p the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

The RFC established by the ALJ did not include a restriction on plaintiff's ability to finger (fine manipulation).  In support

8

of his RFC findings, the ALJ stated the following:

> The State agency medical consultants who
> reviewed the evidence at the initial and
> reconsideration stages of adjudication also
> determined that the claimant was capable of
> performing sedentary work (exhibit 10F).
> Although the State agency medical consultants
> did not examine the claimant, they provided
> specific reasons for their opinions about the
> claimant's exertional capacity showing that
> these opinions were grounded in the evidence
> of record, including careful consideration of
> the objective medical evidence and the
> claimant's allegations regarding symptoms and
> limitations. Therefore, the opinions of the
> State agency medical consultants have been
> provided substantial weight in regard to
> exertional limitations. However, the
> undersigned has provided substantial weight
> to their determination that the claimant does
> not have a severe mental disorder (exhibit
> 9F) based on the testimony and the diagnosis
> of depression by the claimant's treating
> medical sources (20 CFR 404.1527(d) and (f);
> Social Security Rulings 96-2p, 96-6p, 96-8p).

(R. at 23).

A physical RFC assessment was prepared by a state agency
medical consultant, Dr. Goering on September 29, 2004 (R. at 282-
289). Dr. Goering opined that plaintiff is limited in fingering
(fine manipulation) in that plaintiff should limit rapid
repetitive motion with her right hand to occasionally (R. at
285). Dr. Goering noted that plaintiff has a loss of sensation
in the median nerve distribution on the right hand (R. at 289).
Dr. Kim, a second state agency medical consultant, reviewed the
findings of Dr. Goering, and a consultative examination performed
by Dr. Henderson in February 2005 (R. at 289-290). Dr. Kim

9

stated on March 2, 2005 that the RFC assessment made by Dr. Goering is "affirmed as written" (R. at 289).

The ALJ's RFC findings are identical to the exertional and postural limitations set forth by the state agency medical consultants (except that the ALJ further limited plaintiff's ability to lift on a frequent basis to "nominal weight") (R. at 20, 283-284)).  However, the ALJ did not include in plaintiff's RFC that she was limited in fingering to only occasional rapid repetitive motion with her right hand.  The ALJ did not mention this limitation by the state agency consultants, and contrary to the requirement of SSR 96-8p, the ALJ offered no explanation for not adopting this limitation expressed by the state agency medical consultants.

However, when assessing plaintiff's credibility, the ALJ stated the following:

> The claimant's alleged difficulty using her hands is not credible in view of the medical evidence showing only mild right carpal tunnel syndrome and normal left upper extremity findings, and examination findings of 20 pound left and 40 pound right grip strength with preserved dexterity (exhibit 8F/77).  Her allegations are also not consistent with her hobby of sewing, an activity which requires extensive use of the hands.

(R. at 22).

The ALJ referenced the consultative examination by Dr. Henderson dated February 12, 2005 (R. at 263-266).  Dr. Henderson

10

indicated that plaintiff had 40 pounds of grip strength with the right hand (R. at 264). However, he also found "diminished sensation in the medial aspect of the right hand" (R. at 265), and later indicated that he found "numbness along the right medial hand into the small digit" (R. at 266). These findings are consistent with the report of Dr. Goering that plaintiff had a "loss of sensation in the median nerve distribution on the right hand" (R. at 289). This also corresponds with the testimony of the plaintiff that she has numbness and tingling most all the time in her right hand (R. at 330). When asked by the ALJ how long she can use her right hand before stopping, plaintiff testified that she can make out her bills and write 3-4 checks for about 10 minutes (R. at 330-331).

The ALJ also relied on the fact that plaintiff sewed, which requires extensive use of the hands, to discount her credibility in terms of any limitations in the use of her hands. However, not mentioned by the ALJ was the fact that plaintiff indicated that "on a real good day might sew" (R. at 148). Furthermore, the "normal left upper extremity findings" found by the ALJ have no relevance to the issue of whether plaintiff is limited in fingering to only occasional rapid repetitive motion with her right hand.

The court finds that the ALJ erred by failing to consider the medical opinion evidence by Dr. Goering and Dr. Kim that

11

plaintiff was limited in fingering to only occasional rapid repetitive motion with her right hand. No medical opinion evidence disputes this limitation set forth by the two state agency medical consultants. Dr. Kim affirmed the RFC findings by Dr. Goering after reviewing the report by Dr. Henderson. Dr. Goering noted that plaintiff had a loss of sensation in her right hand, and the report of Dr. Henderson indicated diminished sensation and numbness in the right hand. These medical opinions are consistent with plaintiff's testimony.

The ALJ relied on the fact that plaintiff had a hobby of sewing, which requires extensive use of the hands, to discount her credibility regarding limitations in the use of her hands; however, plaintiff actually stated that she might sew on a really good day. The ALJ also noted normal left upper extremity findings; however this finding has no relevance to a fingering limitation in the right hand. Finally, the ALJ also relied on mild carpal tunnel syndrome and Dr. Henderson's report of 40 pounds of grip strength in the right hand to discount plaintiff's alleged difficulty with her hands. However, Dr. Kim affirmed the RFC findings of Dr. Goering although he was aware that plaintiff had carpal tunnel syndrome and had reviewed Dr. Henderson's report. No medical opinion in this record indicates that mild carpal tunnel syndrome or 40 pounds of grip strength is inconsistent with the limitations expressed by Drs. Goering and

Kim.  In the absence of any conflicting evidence on this issue,
the court finds that the ALJ erred by not including in
plaintiff's RFC a limitation in fingering (fine manipulation) to
only occasional rapid repetitive motion with her right hand.[3]

**V.  Should this case be reversed and remanded for further**

**hearing, or reversed for an award of benefits?**

At step five, the burden of proof is on the defendant to
produce evidence that the claimant could perform other work in
the national economy.  Where the burden is not met, reversal is
appropriate.  <u>Harris v. Secretary of Health & Human Services</u>, 821
F.2d 541, 544 (10th Cir. 1987).  When a decision of the
Commissioner is reversed, it is within the court's discretion to
remand either for further administrative proceedings or for an
immediate award of benefits.  When the defendant has failed to
satisfy their burden of proof at step five, and when there has

---

[3]The court would also note that the ALJ, in examining
plaintiff's credibility, noted that plaintiff stopped working the
same month she received a $75,000 workers compensations
settlement, which the ALJ believed showed another motive for
plaintiff's work cessation (R. at 21).  However, the law is clear
that reliance on receipt of workers' compensation benefits in
weighing plaintiff's credibility is improper and undercuts the
objectivity of the ALJ's opinion.  Congress drafted the social
security statutes with the expectation that claimants could
receive both workers' compensation and disability benefits for
on-the-job injuries.  Thus, receipt of such benefits has no
bearing on a claimant's credibility.  <u>Hinton v. Massanari</u>, 13
Fed. Appx. 819, 820 n.1 (10th Cir. July 3, 2001); <u>Cole v.
Barnhart</u>, 293 F. Supp.2d 1234, 1244 (D. Kan. 2003); <u>Stefanopoulos
v. Barnhart</u>, 183 F. Supp.2d 1322, 1329 (D. Kan. 2002); <u>Simmonds
v. Barnhart</u>, 160 F. Supp.2d 1235, 1242-43 (D. Kan. 2001).

been a long delay as a result of the defendant's erroneous disposition of the proceedings, courts can exercise their discretionary authority to remand for an immediate award of benefits.  Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993).  The defendant is not entitled to adjudicate a case ad infinitum until it correctly applies the proper legal standard and gathers evidence to support its conclusion.  Sisco v. United States Dept. of Health & Human Services, 10 F.3d 739, 746 (10th Cir. 1993).  A key factor in remanding for further proceedings is whether it would serve a useful purpose or would merely delay the receipt of benefits.  Harris, 821 F.2d at 545; see Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006).  The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986).

    Plaintiff seeks reversal for an award of benefits.  Based on the lack of any conflicting evidence, the court finds that the ALJ erred by not including in plaintiff's RFC a limitation in fingering (fine manipulation) to only occasional rapid repetitive motion with her right hand.  The VE testified that if plaintiff was also limited to occasional reaching, handling, fingering and bi-manual activity with her dominant hand, there would be no work

14

available in the sedentary, unskilled job base "because
specifically with sedentary work the person needs to be able to
use their fingers at least at the frequent level" (R. at 352,
353). Plaintiff testified that she is right hand dominant (R. at
330).  SSR 96-9p states that most unskilled sedentary jobs
require good use of both hands and the fingers for repetitive
hand-finger actions, and that any significant limitation of an
individual's ability to handle and work with small objects with
both hands will result in a significant erosion of the unskilled
sedentary occupational base.  1996 WL 374185 at *8.

The ALJ's RFC findings limited plaintiff to simple,
repetitive tasks (R. at 20), the ALJ's hypothetical question to
the VE limited the plaintiff to simple, unskilled, repetitive
work (R. at 350), and the ALJ's step five findings limited
plaintiff to unskilled sedentary occupations (R. at 24).  As
noted above, the undisputed evidence was that plaintiff is
limited in fingering (fine manipulation) to only occasional rapid
repetitive motion with her dominant right hand.  The VE testified
that if plaintiff was also limited to occasional reaching,
handling, fingering and bi-manual activity with her dominant
hand, there would be no work available in the sedentary,
unskilled job base "because specifically with sedentary work the
person needs to be able to use their fingers at least at the
frequent level" (R. at 352, 353).  However, the VE was not asked

whether there would be work available in the sedentary, unskilled job base for the plaintiff if she, in addition to the other limitations set forth by the ALJ, was also limited in fingering (fine manipulation) to only occasional rapid repetitive motion with her dominant right hand.

The evidence clearly establishes plaintiff's RFC, as set forth by the ALJ, and including a limitation in fingering (fine manipulation) to only occasional rapid repetitive motion with her dominant right hand.  However, the record does not clearly establish whether, with these limitations, plaintiff can perform other work which exists in significant numbers in the national economy.  Therefore, this case will be remanded for the limited purpose of directing the Commissioner to obtain additional evidence from a vocational expert.  Specifically, the Commissioner is directed to ask a vocational expert whether, given the RFC set forth by the ALJ with the additional limitation that plaintiff is limited in fingering (fine manipulation) to only occasional rapid repetitive motion with her dominant right hand, other work exists in significant numbers in the national economy which plaintiff can perform.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

16

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on August 27, 2007.

> s/John Thomas Reid
> JOHN THOMAS REID
> United States Magistrate Judge